ADELMAN, District Judge,
dissenting:
No one can seriously dispute that Margaret Rudin received ineffective assistance of counsel during her state court homicide trial, reportedly the longest such trial in Nevada history. Although two justices of the Nevada Supreme Court were prepared to grant relief based on the record on direct appeal, a majority directed her to follow the usual procedure of developing her ineffective assistance claim by bringing a post-conviction motion. Rudin attempted to do so but, based on a constellation of circumstances none of which are fairly attributable to her lack of diligence, she was prevented both from properly filing a post-conviction motion and from timely filing a federal habeas corpus petition.
The majority finds unfairness but concludes that our hands are tied. I disagree with the latter proposition and conclude that, on the egregious facts of this case, the doctrine of equitable tolling is sufficiently expansive to provide petitioner with access to the federal courts. Thus, I respectfully dissent.
I.
Regarding the facts, I emphasize only a few key points. Rudin attempted to comply with the state supreme court’s di *1177 rective to present her ineffective assistance claim via a postconviction motion both by requesting the appointment of post-conviction counsel and by attempting to file papers which, according to her, raised the claim. In November 2004, in response to Rudin’s request, the trial court appointed Dayvid Figler as post-conviction counsel but declined to accept Rudin’s pro se submission and instead gave it to Fi-gler. Figler did not file Rudin’s papers and, for almost two years, did nothing except seek continuances. Justifiably fed up, Rudin ultimately asked for and was provided new counsel. By that time, however, both the state postconviction motion deadline and the federal habeas statute of limitations had run.
In August 2007, Rudin’s new lawyer Christopher Oram filed a brief in support of state post-conviction relief and realized that no post-conviction motion had previously been filed. He apprised the post-conviction court of this, and the court found that because of the case’s extraordinary circumstances, including the length and complexity of the trial and Figler’s misconduct, the delay in filing was justified. The state’s counsel complained that the court’s ruling set “a bad precedent” and asked permission to file a brief on the timeliness issue. The post-conviction court granted the request, but the state then failed to file such a brief and instead chose to contest the merits of Rudin’s claim. In December 2008, the post-conviction court granted Rudin relief on her ineffective assistance claim.
The state appealed to the state supreme court and, notwithstanding having forgone the timeliness issue in the post-conviction court, argued that Rudin’s post-conviction motion was untimely. Remarkably, in view of the state’s previous failure to contest the issue, the state supreme court ruled that the post-conviction court had failed to make a sufficient finding of cause for its timeliness ruling. The court also refused to remand the case to enable Ru-din to make a record on the issue. On January 20, 2011, the state supreme court concluded its consideration of the case when it denied en banc review over a dissent which memorably noted, “If this is justice then I must be dreaming.” On April 25, 2011, Rudin filed her federal habeas petition.
II.
A petitioner is entitled to equitable tolling if she shows that she has been pursuing her rights diligently and some extraordinary circumstance stood in her way. Pace v. DiGuglielmo, 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005). The diligence required for equitable tolling purposes is “reasonable diligence,” not “maximum feasible diligence.” Ford v. Gonzalez, 683 F.3d 1230, 1237 (9th Cir.2012). While the threshold necessary to trigger equitable tolling is high, lest the exceptions swallow the rule, Waldron-Ramsey v. Pacholke, 556 F.3d 1008, 1011 (9th Cir.2009), the grounds for granting equitable tolling are highly fact-dependent, Nedds v. Calderon, 678 F.3d 777, 780 (9th Cir.2012).
When considering whether to apply equitable tolling, the Supreme Court has emphasized the need for flexibility and for avoiding mechanical rules. Holland v. Florida, 560 U.S. 631, 650, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010). A court reviewing a habeas petition should adhere to a tradition in which courts of equity have sought to relieve hardships which, from time to time, arise from a hard and fast adherence to more absolute legal rules, and which, if strictly applied, threaten the evils of archaic rigidity. Id.; see also Harris v. Carter, 515 F.3d 1051, 1055 (9th Cir.2008) (“We have stated that the purpose of the equita *1178 ble tolling doctrine ‘is to soften the harsh impact of technical rules which might otherwise prevent a good faith litigant from having a day in court.’ ”) (quoting Jones v. Blanas, 393 F.3d 918, 928 (9th Cir.2004)).
Rudin presents a compelling case for equitable tolling. She consistently sought to press her ineffective assistance claim in the state courts, as she was required to do before turning to the federal courts, yet due to impediments created by others she was prevented from obtaining review on the merits. She attempted to file a pro se submission challenging the effectiveness of her trial counsel, but the post-conviction court turned it over to Figler. Had the court accepted Rudin’s filing, statutory tolling would likely have applied throughout the state post-conviction process.
As the majority recognizes, Figler then abandoned Rudin. See, e.g., Holland, 560 U.S. at 651, 130 S.Ct. 2549 (holding that unprofessional attorney conduct, if sufficiently egregious, may constitute an extraordinary circumstance justifying equitable tolling); Spitsyn v. Moore, 345 F.3d 796, 801 (9th Cir.2003) (“We similarly conclude that the misconduct of Spitsyn’s attorney was sufficiently egregious to justify equitable tolling of the one-year limitations period under AEDPA.”). And when Ru-din realized that Figler was doing nothing, she again demonstrated due diligence by asking the post-conviction court to replace him.
The state suggests that, notwithstanding Figler’s misconduct, Rudin could have filed a protective petition in federal court. But Rudin had no reason to know that a post-conviction motion had not been docketed during the one year limitation period set by state law such that she could not avail herself of statutory tolling. Reasonable diligence did not require her to file a protective federal petition based on the possibility that the state post-conviction court would without informing her refuse to file her pro se submission and that her court-appointed lawyer would never file a post-conviction motion in state court. As we stated in Harris, the fact that a prisoner “could have filed a timely federal habeas petition at a certain point in time is not dispositive.” 515 F.3d at 1055.
I part ways with the majority when it concludes that in August 2007, after Ru-din’s new lawyer advised the postconviction court that no state post-conviction motion had been filed, Rudin failed to exercise reasonable diligence by not filing a protective federal habeas petition. The facts do not justify this conclusion. First, by August 2007 the federal habeas statute of limitations had long since run. It would have been pointless for Rudin to file a “protective” habeas petition pursuant to Pace because, unlike in Pace, there was nothing to protect. In Pace, the prisoner could have filed a protective habeas petition before the federal habeas statute of limitations had run and thus had a timely habeas petition on file. In the present case, any protective petition that Rudin might have filed in 2007 would have been untimely and would not have protected anything. In all likelihood, it would have been dismissed because it was untimely. See, e.g., Urrizaga v. Attorney General for Idaho, No. CV-07-434, 2008 WL 1701735, at *3 (D.Idaho Apr. 9, 2008) (dismissing as untimely a petition that the prisoner apparently intended to function as protective because by the time he filed it the statute of limitations had already expired).
The second reason that Rudin had no reason to file a protective habeas petition based on the proceedings in the post-conviction court is that the state provided her with good cause to believe that it had given up on the timeliness issue. As discussed, at the August 2007 hearing, the post-conviction court found that, because *1179 of the extraordinary circumstances of the case, the post-conviction submission by Rudin’s new lawyer was timely. The state asked for and received permission from the court to contest the timeliness issue but then chose not to do so. The state essentially sandbagged Rudin, lulling her into believing that it was not contesting the post-conviction court’s conclusion that she had properly filed a post-conviction motion which tolled the federal clock. See Maghee v. Ault, 410 F.3d 473, 476 (8th Cir.2005) (“Equitable tolling is appropriate ... where a defendant’s conduct lulls the prisoner into inaction.”). The state’s failure to raise the timeliness issue in the post-conviction court certainly provided Rudin with a reasonable basis to believe that she had no need to file a protective petition in federal court; she was entitled to rely in good faith on the state’s position. Cf. Harris, 515 F.3d at 1055 (finding equitable tolling where the petitioner relied in good faith on then-binding circuit precedent).
The majority attempts to buttress its contention that Rudin should have filed a protective petition by citing the state’s challenge to the timeliness of her post-conviction motion in the state supreme court after the post-conviction court had granted her relief in December 2008. Surely by this time, the majority con-eludes, Rudin should have known that her eligibility for statutory tolling was in jeopardy. But reasonable diligence did not require Rudin to file a protective federal petition while the state appealed her victory. First, as stated, the federal statute of limitations had long since run, making a protective petition pointless. Second, a litigant in Rudin’s position could have reasonably concluded that the state had waived or forfeited its right to contest the timeliness issue by not having done so in the post-conviction court. Finally, at that point in the proceedings, Rudin had prevailed. She had no reason to file a protective petition because she had no claim to raise. She had won and, as a result, there was no adverse decision for the federal courts to review. To conclude that she is not entitled to equitable tolling because she failed to file a protective petition after she had won her case in state court seems extremely unfair.
And after she lost in the state supreme court in 2011, she promptly filed in federal court.[1]
III.
Commentators have noted that modern habeas corpus law requires prisoners to run a procedural gauntlet before they can even get their cases in front of an article
*1180 III judge for review of the merits. See John H. Blume, et al., In Defense of Non-Capital Habeas: A Response to Hoffmann and King, 96 Cornell L.Rev. 435, 442-43 (2011). Nevertheless, both the Supreme Court and the Ninth Circuit have recognized that equitable doctrines remain available to soften the harsh impact of technical rules that prevent a good faith litigant from having her day in court. If ever there was a case in which the deadlines need to be relaxed to avoid a miscarriage of justice, this is it.

. The majority cites White v. Martel, 601 F.3d 882, 884-85 (9th Cir.2010) (per curiam), for the proposition that a prisoner must file a protective petition to show reasonable diligence even though the AEDPA limitations period has already run. In White, however, the prisoner's state court petition was held untimely on January 6, 2006, but the prisoner had until January 12, 2006 to timely file a federal habeas petition. See id. at 884; White v. Subia, No. 2:06-cv-02840, 2008 WL 2302534, at *2 (E.D.Cal. May 30, 2008). White turned on the fact that the prisoner waited until December 14, 2006, nearly a year after his state court motion was rejected, to file in federal court.
The facts of the present case are not comparable. Here, on August 22, 2007 (about two years after the federal statute of limitations had run), the parties first discovered that no state post-conviction motion had been filed. On that same date, the post-conviction court accepted Rudin’s supporting brief as a proper motion, a determination the state failed to challenge until after it lost on the merits. As discussed in the text, reasonable diligence did not require Rudin to file a protective petition while the state, having forfeited a timeliness challenge, appealed her victory.